ATLANTIC JOINT STOCK LAND BANK OF RALEIGH v. N. B. FINCH
    AND WIFE, BETTIE D. FINCH, C. RICHARDSON, N. H. FINCH AND
    PEOPLES NATIONAL INSURANCE COMPANY OF NEW YORK.

(Filed 24 February, 1932.)

**Fraudulent Conveyances C e—In this action by creditors to set aside
    deed for fraud a directed verdict in defendant's favor was not error.**

In order to set aside a deed to lands from parents to their son it is
required that there.be a fraudulent intent on the part of the parents and
a knowledge of fraud by the son, and where all the evidence tends to
show that the son surrendered notes delivered to him by his father for
money owed him, and made a cash payment, which, together, constituted
a full consideration for the lands at the time of the transaction, and that
the land conveyed had been conveyed to the mother by the father in
consideration of her relinquishing her right of dower in his other lands
for the benefit of his creditors, and that at the time of the transaction
the father had property then more than sufficient to satisfy all his debts,
and that none of the parties had any fraudulent intent or knowledge
of any fraud: *Held*, an instruction directing a verdict if the jury found
the facts to be in accordance with the evidence is not prejudicial.

APPEAL by plaintiff from *Moore, Special Judge* and a jury, at December Term, 1931, of NASH. No error.

This is an action by plaintiff against the defendants N. B. Finch and wife, Bettie D. Finch, and N. H. (Herman) Finch, to set aside a deed for fraud.

The evidence on the part of plaintiff was to the effect that on 30 April, 1925, the defendants, N. B. Finch and his wife, Bettie D. Finch, borrowed from plaintiff $30,000, on six tracts of land, totaling 1,200

acres, in Nash County, North Carolina, giving plaintiff a mortgage to secure same—amortization plan. The plaintiff Land Bank surveyed and appraised the tracts at $60,000. Plaintiff introduced in evidence judgment entitled "Atlantic Joint Stock Land Bank, Raleigh Savings Bank and Trust Company, trustees, *v.* Nathaniel B. Finch and wife, Bettie D. Finch," amounting to $25,439.66, with interest, subject to a credit of $15,581.25, the credit being made after the sale of the land, showing judgment rendered 25 November, 1929, credit having been made 18 December, 1930. Confirmation decree by Hon. E. H. Cranmer, judge of the Superior Court rendered at the November Term, 1930, confirming sales of land for purchase price of $16,000. Final account showing credit of $15,581.25 on the amount of the judgment.

Mrs. Bettie D. Finch, an adverse witness for plaintiff, testified, in part: "I released my dower in certain of his real property in consideration of his conveying to me the home place in Spring Hope. Prior to that time I suppose I had signed the notes with my husband which are sued upon by the plaintiff in this action. I did not know that they were notes at that time and I did not own any property. I did not own any property prior to the time this home place was conveyed to me. I did not own any property other than the home place on 5 August, 1929, the date of the deed from me and Mr. Finch to our son, N. H. (Herman) Finch. On 16 August, the date of the execution and registration of that deed I did not own any other property. . . . I conveyed the place to my son to pay off a debt of my husband, which my husband had neglected to pay off four or five years. . . . At that time I had signed my dower rights away to only these six tracts. It was agreed that I was to have the home place to reimburse me for my dower in the Wake and Franklin lands if I would sign the papers. . . . The shrinkage in real estate values all over the country has caused the change in values. All the improvements are the same. I do not know who has got this property now. *I did not intend to defraud my creditors in conveying this land to my son for consideration of the surrender of the notes my husband owed him and payment to me of the money.*"

N. B. Finch owed his son N. H. (Herman) Finch for services rendered before he went to Chicago, which was evidenced by two notes payable to his order, one dated 1 January, 1926, in the sum of $2,210.41, and the other dated 1 January, 1927, for $820.00.

N. B. Finch, an adverse witness for plaintiff, testified, in part: "I am the father of N. H. (Herman) Finch. The deed that I made to my wife, Mrs. Finch, conveyed to her the home place located in the town of Spring Hope, was made at or about the time that I made composition in bankruptcy with my creditors. I do not recall the date. Upon my conveying to her the home place in Spring Hope she released

to my creditors her dower interest in certain of my farm property located in Wake and Franklin counties. The property that she released her dower in was conveyed to Mr. Moss as trustee for certain unsecured creditors. I retained a part of my town property. . . . Every creditor who had security on farm property or collateral such as notes and mortgages retained the amount of security they had, accepting that in discharge of the debt. The unsecured creditors accepted in the composition this real property which was conveyed to Mr. Moss. All creditors who had accounts over $200 were protected by this deed to Mr. Moss. All creditors holding accounts under $200 were paid off in cash, forty cents on the dollar. . . . At the time they got a deed the land was in very near the same condition as when it was mortgaged to them. In good condition. In my opinion the security held by the Land Bank in its mortgage was amply sufficient to pay the debt at the time my wife and I conveyed the home place to our son, N. H. (Herman) Finch. . . . According to their appraisal and what I had paid on it I felt sure there would be a surplus. The tax value was $34,000. I am 74 years old, and have lived my life in this county. I have lived in Spring Hope for 35 years, and in that time I have been a merchant, supply man, president of a bank, and occupied positions of trust. I have never been drunk. *When the depression started in North Carolina and all over the world I began to lose money too, and values shrunk. At the time my wife and I conveyed the home place to our son I did not have any purpose in my mind to defraud any creditors."*

N. H. (Herman) Finch, an adverse witness for plaintiff, testified, in part: "I was born and raised at Spring Hope, N. C. I left there 5 years ago 5 January, 1927. I went to Moody Bible Institute in Chicago, Ill. I am now a minister. . . . On 5 August, 1929, in my opinion, the home place was worth approximately between three and four thousand dollars. . . . I have not collected any rents from it. I have paid taxes. I sent the money to my mother. . . . Some day I am coming back here to live, the Lord willing, and then I will take up my abode for myself and my wife and family. . . . I went to Chicago, Ill., and he (his father) is now reimbursing me by giving me that home place in Spring Hope to fulfill this debt on the notes that I had in my possession and when he transferred the deed."

On cross-examination by defendants, the following letters were introduced in evidence:

"Spring Hope, N. C., 3 August, 1929.

Dear Herman: We have been talking to Lillian about the home place in Spring Hope. Your papa and I have decided to let you have it for $3,000 (dollars) by paying $100.00 in cash and will take up the notes

BANK *v.* FINCH.

that you hold against your papa. The balance of the purchase price. You can send us the $100.00 in cash. I trust you are all well. Give Baxter a good hug for me. Much love. Mama."

"153 Institute Place, Chicago, 8 August, 1929.

Dearest Mama: I received your letter, and was glad to hear from you. You said that you and papa have decided to sell me the home place in Spring Hope for ($3,000) three thousand dollars, if I will pay ($100) one hundred dollars in cash when the deed is made to me, and will take the two notes that I hold against papa in payment for the balance due after giving credit for ($100) one hundred dollars that I am sending you today in cash. I am sending you the two notes that I hold against papa. When the deed is made to me you can keep it until I call for it. I am getting along nicely in my work. I am glad that my little family has arrived, but I wish that you could have been with them. With love. Herman."

The witness continued: "I sent all the notes and money back and the deed was thereupon executed. My mother retained the custody of the deed as I requested her to do in that letter. When I went to Chicago 5 years ago to begin work, I went as a student in the Moody Bible Institute. I was graduated from the Institute. I am now engaged in work with the Chicago United Mission. I receive a salary of $115.00 per month in addition to my board and lodging. Two churches are back of this mission, the Congregational and the Presbyterian. My work is there and I am back home on account of this law suit. I am married and have a family consisting of a wife and two children. I married a Nash County girl from Whitakers, N. C. It appears from the correspondence that I paid for this home place, notes aggregating over $3,000 exclusive of interest and $100 that my father sent me. My mother and father have been allowed by me to remain in possession of the home place since they made me the deed. I have not felt any desire whatever to put them out. The place is insured in my name. . . . When I left in 1925 my father was in good financial condition, excellent so far as I knew. I did not have any knowledge that my father was trying to defraud his creditors in making this deed to me. I did not have any knowledge that my mother was trying to defraud her creditors in making the deed to me. *Even if they had been attempting to defraud their creditors I would not have participated in it, and I did not. At the time of the whole transaction I was studying for the ministry, Christian ministry.*"

The issues submitted to the jury and their answers thereto, were as follows:

"1. In what amount were the defendants, N. B. Finch and Bettie D. Finch indebted to plaintiff bank on 5 August, 1929? Answer: $10,000.

2. Was the deed from N. B. Finch and wife, Bettie D. Finch, to N. H. (Herman) Finch, given for the purpose of delaying, hindering and defrauding plaintiff in the collection of said debt, as alleged in the complaint? Answer: No.

3. Did the defendant, N. H. (Herman) Finch have knowledge of and participate in such fraudulent intent? Answer: No."

The C. Richardson transaction we do not think necessary to be considered from the position we take in regard to the N. H. (Herman) Finch transaction.

The defendants introduced no evidence. The court below instructed the jury as follows: "The first issue is answered $10,000 by consent. If you believe the evidence and find the facts as the evidence tends to show, you would answer the second and third issues No."

The jury rendered its verdict in accordance with the peremptory instructions of the court as appears in the record. The court signed the judgment as appears in the record. To the signing of the judgment the plaintiff excepted, assigned error and appealed to the Supreme Court.

*Thomas W. Ruffin for plaintiff.*
*Spruill & Spruill for defendants.*

CLARKSON, J. We see no prejudicial error in the peremptory instructions given by the court below. It may be noted that the plaintiff introduced as its witnesses the three parties primarily involved in this controversy, N. B. Finch, his wife Bettie D. Finch, the father and mother, and N. H. (Herman) Finch, the son—a young minister. N. B. Finch and his wife, Bettie D. Finch, testified that they had no intention or purpose in their minds to defraud the plaintiff, and the son testified that he had no knowledge of any fraud on their part. "Even if they had been attempting to defraud their creditors I would not have participated in it, and I did not."

It was in evidence that the "home place" in Spring Hope, N. C., was worth about the $100 and the principal and interest on the notes held by N. H. (Herman) Finch. When the conveyance was made by the father and mother to the son, the $30,000 mortgage had been reduced to some $25,000. The father testified "In my opinion the security held by the Land Bank in its mortgage was amply sufficient to pay the debt at the time my wife and I conveyed the home place to our son, N. H. (Herman) Finch."

In the case of *Aman v. Walker,* 165 N. C., in the fourth declaration of principles, contained in that case, at page 227, the Court speaking to

the subject, said: "(4) If the conveyance is upon a valuable considera-tion *and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee* and of which intent he had no notice, it is valid."

Naturally the mother, on account of everything being swept away from them by the deflated conditions, thought the notes of small value. She "knew that Mr. Finch had nothing to pay them with," yet she further testified "I conveyed the place to my son to pay off a debt of my husband, which my husband had neglected to pay off 4 or 5 years."

In *McCanless v. Flinchum,* 89 N. C., at pp. 374-5, the following observations are made: Every sale of real or personal property made to a son by his father, at the time embarrassed with debts beyond his ability to pay them, is not necessarily fraudulent and void as to credi-tors. If the son honestly buys the land or other property from the father in such circumstances, and pays for it a fair price, such a sale is good and valid as to everybody, and it stands on the same footing as if it had been made to a stranger. There is no reason why a father unable to pay his debts may not sell his property to his son, and the only difference between such a sale and one to a stranger is, that the close relationship between the father and son, if the bona fide of the sale shall be questioned, is a circumstance of suspicion, and evidence tending to show a fraudulent intent." *Bank v. Lewis,* 201 N. C., 155-6.

The contentions of plaintiff are not bourne out by the evidence.

In *Denny v. Snow,* 199 N. C., at p. 774, the principle is thus stated: " 'A verdict or finding must rest upon facts proved, or at least upon facts of which there is substantial evidence, and cannot rest upon mere surmise, speculation, conjecture, or suspicion. There must be legal evidence of every material fact necessary to support the verdict or finding, and such verdict or finding must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities.' 23 C. J., pp. 51-52; *S. v. Johnson,* 199 N. C., 429." *Shuford v. Scruggs,* 201 N. C., at p. 687.

We have it admitted on this record that at the time that N. B. Finch and wife, Bettie D. Finch conveyed the 1,200 acres of land to plaintiff bank, to borrow $30,000, the land at plaintiff's appraisal was worth $60,000. The Finches reduced the debt to $25,000, and believed that the land was fully sufficient to bring the mortgage debt on it. Mrs. Finch was only surety for her husband. Plaintiff now owns the land under foreclosure proceeding that it appraised a few years before at $60,000. It has a judgment against Mr. and Mrs. Finch for $10,000 and in this proceeding is charging this old man, 74 years of age, and his wife and

minister son with fraud, because the son had purchased the land at a valuable consideration and let the old folks, in their old age, live in this home place.

Defendants, in their brief, say: "Who could have foreseen the shrinkage in the value of lands that has occurred? Who could have made provision against the catastrophic losses that have come to those we catalogue as the 'great middle class' in North Carolina? In 1925, a man with 1,200 acres of highly improved intensively cultivated farm lands in Nash County, accounted himself, and was reasonably accounted by his neighbors, a wealthy man. Such lands were selling at $100.00 per acre. In 1930, we suddenly waked up to the full significance of the term 'land poor.' Like a thief in the night, this condition came upon us, and the man, who had incurred debt, when a dollar contained only fifty cents in value, was called upon to pay back that dollar when it contained two dollars in value." In the judgment below, we find,

No error.